## J. B. CROOM LUMBER CO. v. ABERNATHY et al.

No. 21109.    Opinion Filed May 3, 1932.

Rehearing Denied June 7, 1932.

Chas. E. Wells and Jno. K. Bowman, for plaintiff in error.

Abernathy & Howell, for defendants in error.

KORNEGAY, J. This case is brought here by petitioner in error for the purpose of determining whether or not the district court of Pottawatomie county did right in sustaining a demurrer to the plaintiff's evidence.

According to the case-made, the plaintiff in error, on the 3rd of October, 1928, filed a suit against G. C. Abernathy, Carrie Abernathy, and R. A. Brown, for the purpose of recovering the amount of a bill for some lumber and building material, alleged to have been furnished the defendants for the use and repair of some buildings on lot 1 and the north 25 feet of lot 8 in block 2 of the W. J. Estes amended plat to the city of Shawnee, Okla. It was alleged that the building material was furnished to the defendant between the 18th of August, 1927, and the 26th of November, 1927, and that they were justly indebted to the plaintiff for it, and interest was asked for at the rate of 6 per cent. from the 26th of November, 1927.

Further allegation was made that on the 24th of January, 1928, a lien statement was filed in the office of the court clerk of Pottawatomie county, and that a notice of the lien statement was served on the defendants by delivering a copy.

The second count asked for a reasonable attorney's fee, and for cost, and for the fixing of a lien upon the property and its sale, to satisfy the cost. attorney's fee, and amount due the plaintiff.

A copy of the lien statement is set out in the case-made, in which it is claimed that plaintiff in error has this claim against G. C. Abernathy and Carrie Abernathy, as owners. and R. A. Brown. as contractor, for material furnished. An itemized statement of the account was set out with it. It was further stated in the lien statement that the Abernathys and R. A. Brown agreed to pay it, and that the same was just. due, and unpaid. The itemized statement accompanying it is in the form of a statement of account, and is addressed to G. C. Abernathy and R. A. Brown It sets out the furnishing of material for buildings. beginning in August, 1927, with a statement setting forth the tickets, some of which are

not exactly in order, and it shows that the last item, "4 bundles of shingles," was November 26, 1927. The credit items show some material returned, and on the 23rd of September a check for $650, leaving a balance of $981.42. Accompanying it is a notice of filing of the lien and of the claim being $981.42, served upon G. C. Abernathy and Carrie Abernathy on the 24th of January, 1928, by the sheriff.

There is shown a special appearance by G. C. Abernathy, Carrie Abernathy, and R. A. Brown, and a motion to quash, filed November 4, 1928, by Abernathy & Howell, "attorneys for the purpose of this motion only." This special appearance and motion to quash were withdrawn.

An answer was filed by G. C. Abernathy and Carrie Abernathy, the first section being that they denied all the allegations contained in the plaintiff's petition, except the ownership of lot 1 and the north 25 feet of lot 8. The second paragraph was that they denied that they employed the plaintiff to furnish building material to be used in the repair of the buildings thereon, or authorized any other person to employ it. The third paragraph denies that the amount of building material was used in the construction, and the fourth paragraph is a suit for $2,500 for clouding the title by reason of filing a lien statement, and the fifth was that the plaintiff had been fully paid for all the material used.

There was a cross-petition setting up the fact that the filing of the lien claim was malicious and for the purpose of forcing the defendants to pay what they did not owe, and they demanded judgment for $2,500 actual damages and $2,500 punitive damages. This was signed by Abernathy & Howell, as attorneys, and verified by G. C. Abernathy on the 6th of December, 1928.

A demurrer was interposed to the answer as well as to the cross-petition, and later the demurrer was overruled, but it does not state whether it was the demurrer to the answer or the cross-petition, but the defendant G. C. Abernathy was given ten days to file an amended answer on the 7th of January, 1929.

On the 14th of June, 1929, the cause came on for trial before the Honorable Hal Johnson, and the cross-petition was dismissed, and testimony of the plaintiff's bookkeeper was offered, and the Abernathys objected because no case was set out in the petition. After detailing her employment, she identified the ledger leaf wherein she kept the ticket numbers and the account, and testified that the amount of the account was about $1,630 and $650 was paid. She detailed the method pursued in getting the goods, and also the method of keeping account of it, in which the drayman would sign for the material, and part of the tickets were signed by Mr. Abernathy's son and part by the drayman. Mr. Abernathy, the attorney, informed the court that there were some No. 2 tickets that he compared with the statement in his files last night. The court asked if the tickets checked with the statement rendered, and Mr. Abernathy's answer was "yes." Then Mr. Abernathy stated that the statement attached to the petition corresponded in every respect, except with reference to one date.

The witness was then cross-examined by Mr. Abernathy and she stated that Mr. Brown was having materials delivered at other jobs than the Abernathy job, and when she was through, offer was made of the original ledger sheets and of an itemized statement, both of which appear in the case-made. The invoice tickets were admitted, and the lien statement was introduced as exhibit No. 4, with a leave to Mr. Abernathy later to strike it. He admitted personal service of the lien statement on the 24th of January, 1928.

The lien statement, as introduced, showed it was duly verified by J. B. Croom, and it contained an itemized statement of the account, and it showed that items were delivered as late as the 26th of November. Mr. G. C. Abernathy was introduced and admitted the ownership of the property, and that R. A. Brown was his nephew, and that in 1927 Brown placed some improvements on the property for the witness. The witness testified with reference to Brown as follows:

"Q. Did Robert A. Brown, in 1927, place some improvements on this property for you? A. Yes, sir. Q. Was that in the nature of a contract between you and him? A. Here is the situation in regard to that: Mr. Brown came to Shawnee for the purpose of developing some property belonging to his mother, and while he was at that it was suggested, whether by him or Mrs. Abernathy or me I don't remember, that some improvements and repairs and additions be made to our house, and we—I am trying to state it in legal language, but you can move to strike it if you want to—but we agreed he should make those improvements and purchase and pay for the labor and material and that we would pay him the cost of those materials and the labor. I can't say there was any understanding or

agreement as to any compensation to him for what he was doing. Q. Well, he did, then, secure some material and place some improvements upon this place? A. Yes, sir. He did. Q. Do you know whether he secured any from the plaintiff, the Croom Lumber Company, or not? A. It is my understanding he did, for after, at his request, I wrote a check, the original of which I have here, for $650, payable to the Croom Lumber Company. Mr. Bowman: That is all."

Mr. R. A. Young testified that he had examined the improvements made, and he detailed sufficient from which it might be inferred that the amount and value of the material furnished was far greater than the amount that Mr. Abernathy had paid. Hardwood floors entered into it, French doors, and a sun room, a garage and a breakfast room and sleeping porches, reroofing for the house and garage; and with that the plaintiff rested.

The defendants Abernathys demurred to the evidence, because the evidence was not sufficient to establish a right to a personal judgment against the defendants, and the same as to the lien claimed, both of which were sustained. However, there was a judgment entered against Brown for $981.32 and interest at 6 per cent. to November 24, 1927, and $100 attorney's fee. Brown apparently had passed out of the litigation and had filed no pleadings after the motion to quash the service. Brown was a nephew of Abernathy.

Under the conditions that we have recited here, we do not think the demurrer to the evidence should have been sustained. Most clearly the debt was owing, and there was nothing to contradict its being owed. Besides, it appeared that Brown was not a contractor, on the testimony of Abernathy himself. The court, in rendering judgment against Brown for the amount claimed, found that he got the goods. Abernathy got the benefit without paying. The court must have found that a lien on the property was involved, as an attorney fee of $100 was adjudged in plaintiff's favor against Brown, which was not allowable except by virtue of a lien being decreed. Perhaps Abernathy might have a defense to what was shown, but a demurrer to the evidence practically admits the truth of what is sworn to.

This cause should be reversed for a new trial. It is accordingly reversed and remanded, with directions to grant a new trial; and the cost of this proceeding in error will be taxed to the defendants in error.

CLARK, V. C. J., and RILEY, CULLISON, SWINDALL, ANDREWS, and McNEILL, JJ., concur. LESTER, C. J., and HEFNER, J., absent.